1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10  ROBERT BARDO,

11              Plaintiff,                     No. CIV S-09-3479 GEB EFB P

12         vs.

13  M. MARTEL, et al.,
                                           ORDER AND
14              Defendants.                 FINDINGS AND RECOMMENDATIONS

15  _____/

16         Plaintiff is a state prisoner proceeding without counsel in a civil rights action brought

17  under 42 U.S.C. § 1983.  Plaintiff claims that defendants Lockhart, Butcher, and Ramos

18  ("defendants") violated plaintiff's rights under the First and Fourteenth Amendments by

19  confiscating plaintiff's incoming mail and personal property while he was confined to Mule

20  Creek State Prison.  Dckt. Nos. 1, 7.  The matter is currently before the court on cross-motions

21  for summary judgment.  For the reasons stated below, the undersigned recommends that

22  plaintiff's motion for summary judgment be denied, and defendants' cross-motion for summary

23  judgment be granted.

24  ////

25  ////

26  ////

## I.      Background

The exhibits to plaintiff's complaint indicate that he is currently serving a life sentence for the murder of actress Rebecca Schaeffer.  Dckt. No. 1 at 33.[1]  This lawsuit involves plaintiff's possession of images of his murder victim.  Plaintiff alleges that on February 24, 2009, defendant Lockhart, while working in the prison mailroom, confiscated two envelopes addressed to plaintiff that contained various internet printouts of Ms. Schaeffer.  *Id.* at 7.  Plaintiff also claims that on February 25, 2009, defendants Lockhart, Butcher and Ramos searched plaintiff's cell in retaliation for plaintiff filing a federal civil rights lawsuit.  *Id.*  According to plaintiff, defendants confiscated "non-contraband" property, including additional printouts of Ms. Schaeffer.  *Id.*  Plaintiff alleges defendants confiscated his property pursuant to California Code of Regulations, title 15, section 3270, which plaintiff contends is unconstitutionally overbroad and vague.  *Id.* at 11.  Plaintiff claims the defendants have violated his rights under the First and Fourteenth Amendments.  *Id.* at 12.

## II.     Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

////

---

[1] For ease of reference, the page numbers cited herein refer to those assigned by the court's electronic docketing system and not to those assigned by plaintiff.

1    The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

2    or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

3    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

4    trial.'" *Matsushit*a, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on

5    1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the

6    initial responsibility of presenting the basis for its motion and identifying those portions of the

7    record, together with affidavits, if any, that it believes demonstrate the absence of a genuine

8    issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

9    Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the

10   burden then shifts to the opposing party to present specific facts that show there is a genuine

11   issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67

12   F.3d 816, 819 (9th Cir. 1995).

13   A clear focus on where the burden of proof lies as to the factual issue in question is

14   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

15   seeking summary judgment does not necessarily need to submit any evidence of its own.  When

16   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

17   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

18   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

19   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

20   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

21   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

22   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

23   should be entered, after adequate time for discovery and upon motion, against a party who fails

24   to make a showing sufficient to establish the existence of an element essential to that party's

25   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

26   circumstance, summary judgment must be granted, "so long as whatever is before the district

3

1    court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

2    satisfied." *Id.* at 323.

3        To defeat summary judgment the opposing party must establish a genuine dispute as to a

4    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

5    that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

6    at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

7    law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

8    material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

9    opposing party is unable to produce evidence sufficient to establish a required element of its

10   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

11   an essential element of the nonmoving party's case necessarily renders all other facts

12   immaterial."  *Celotex*, 477 U.S. at 322.

13       Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

14   the court must again focus on which party bears the burden of proof on the factual issue in

15   question.  Where the party opposing summary judgment would bear the burden of proof at trial

16   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

17   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

18   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

19   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

20   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

21   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

22   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

23   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

24       The court does not determine witness credibility.  It believes the opposing party's

25   evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

26   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

4

proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*  If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue. *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

On October 19, 2010, the undersigned informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.    Standards Applicable to Plaintiff's First and Fourteenth Amendment Claims**

**A.    Retaliation**

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  Thus, to prevail on a retaliation claim, the prisoner "must show that the challenged action 'did not reasonably advance

1   a legitimate correctional goal.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting

2   *Rhodes*, 408 F.3d at 568).  On summary judgment, "the plaintiff must demonstrate there is a

3   triable issue of material fact on each element of his claim . . . ." *Id.* at 1269.

4         **B.**      **Confiscation of Mail/Property**

5         Prisoners have a First Amendment right to send and receive mail.  *Witherow v. Paff*, 52

6   F.3d 264, 265 (9th Cir. 1995) (per curiam).  They also have a liberty interest in communication

7   by mail that is protected by the Due Process Clause of the Fourteenth Amendment.  *Procunier v.*

8   *Martinez*, 416 U.S. 396, 418 (1974) *overruled on other grounds by Thornburgh v. Abbott*, 490

9   U.S. 401, 413-14 (1989).

10         Regulations limiting prisoners' access to information and correspondence are valid only

11   if they are reasonably related to legitimate penological interests.  *Thornburgh*, 490 U.S. at 413

12   (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  "[C]onsiderable deference [is given] to the

13   determinations of prison administrators who, in the interest of security, regulate the relations

14   between prisoners and the outside world."  *Id.* at 408.  Four factors are relevant in determining

15   whether a prison regulation impermissibly infringes on an inmate's constitutional rights: (1)

16   whether there is a "valid, rational connection between the prison regulation and the legitimate

17   governmental interest put forward to justify it"; (2) "whether there are alternative means of

18   exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the

19   asserted constitutional right will have on guards and other inmates and on the allocation of

20   prison resources generally"; and (4) the "absence of ready alternatives."  *Turner*, 482 at 89-90

21   (internal quotations omitted).

22         A regulation may be "void for vagueness" if it fails to clearly define its prohibitions, and

23   may be impermissibly "overbroad" if it prohibits constitutionally protected conduct.  *Grayned v.*

24   *City of Rockford*, 408 U.S. 104, 108, 114-115 (1972).  Where an inmate claims that a prison

25   regulation is impermissibly vague or overbroad, the regulation is analyzed under the test set forth

26   in *Turner*.  *See Bahrampour v. Lampert*, 356 F.3d 969, 975-76 (9th Cir. 2004).

1    To defeat summary judgment, the plaintiff "must demonstrate that the regulations are not

2    reasonably related to legitimate penological interests, or that there is a genuine issue of material

3    fact regarding the applicability of the regulations to the materials." *Id.* at 973.

4    **IV.    Plaintiff's Motion for Summary Judgment**

5    Plaintiff's July 22, 2011 motion for summary judgment includes numerous declarations

6    signed by plaintiff under penalty of perjury, as well as several exhibits that plaintiff authenticates

7    through his declarations.[2]  *See* Pl.'s Mot. for Summ. J. ("Dckt. No. 38").  Plaintiff's motion also

8    includes a statement of undisputed facts supported by citations to several of the attached

9    exhibits, including a copy of a March 13, 2009 Informational Chrono, a completed Standard Cell

10   Search form (dated February 25, 2009), and a copy of California Code of Regulations, title 15,

11   section 3270.  *Id.* at 2-8, 21, 33-36, 37-40, 46-50.[3]  The evidence submitted by plaintiff

12   establishes the following:

13   1.  On February 24, 2009, defendant Lockhart confiscated six internet photographs of

14   Rebecca Schaeffer, an actress and plaintiff's murder victim, that had been mailed to plaintiff.

15   2.  Plaintiff is convicted of and serving a state prison sentence of life without parole for

16   killing Ms. Schaeffer.

17   3.  On February 25, 2009, correctional officers Lockhart, Butcher and Ramos searched

18   plaintiff's cell.  Lockhart again confiscated internet photographs and written references to

19   _____

20   [2] On August 1, 2011, plaintiff filed a motion to strike Exhibits E and F from his motion.
     Dckt. No. 40.  Plaintiff's request is granted, and those exhibits are not being considered in
21   resolving plaintiff's motion.

22   [3] Defendants oppose plaintiff's motion for summary judgment on the ground that plaintiff
     failed to provide the court with any statement of facts and any admissible evidence to support the
23   facts that he relies upon. Dckt. No. 39 at 7.  Defendants contend that plaintiff has attached
     numerous documents that have not been authenticated under Federal Rules of Evidence 801,
24   802, 901, or 902.  *Id.*  These inaccurate and generalized objections are overruled.  Moreover,
     defendants' inclusion of the same exhibits to which they object, with their cross-motion for
25   summary judgment, calls into question whether there is a good faith factual basis for defendants'
     authenticity objections.  *See* Dckt. No. 39, Decl. of Lockhart in Supp. Thereof ("Lockhart
26   Decl."), Exs. A, B.

1  plaintiff's victim.

2      4. On March 4, 2009, Lockhart again searched plaintiff's incoming mail and confiscated

3  five internet photographs of plaintiff's victim that were sent to plaintiff by a person named Ken

4  Karnig.

5      5. Lockhart claims to have confiscated these items under the authority of California

6  Code of Regulations, title 15, section 3270.  That section provides as follows:

> The primary objectives of the correctional institutions are to protect the public by
> safely keeping persons committed to the custody of the Director of Corrections,
> and to afford such persons with every reasonable opportunity and encouragement
> to participate in rehabilitative activities.  Consistent effort will be made to insure
> the security of the institution and the effectiveness of the treatment programs
> within the framework of security and safety.  Each employee must be trained to
> understand how physical facilities, degree of custody classification, personnel,
> and operative procedures affect the maintenance of inmate custody and security.
> The requirement of custodial security and of staff, inmate and public safety must
> take precedence over all other considerations in the operation of all the programs
> and activities of the institutions of the department.

13      6. Section 3270 does not expressly state a requirement for, or otherwise specifically

14  address the confiscation of "internet face photographs of crime victims."  Dckt. No. 38 at 7.

15      7. The photos confiscated by Lockhart do not contain frontal nudity.

16      Plaintiff argues that Lockhart's actions were done in retaliation for filing other civil

17  rights lawsuits in federal court.  *Id.* at 15, 31-32.  Plaintiff claims that after the February 25, 2009

18  cell search, he informed Lockhart that he intended to file an administrative appeal.  *Id.* at 14.

19  Lockhart allegedly responded, "Go ahead, I know you, you'll file a 602 if a piece of paper is

20  dropped."  *Id.* at 15.  Plaintiff contends that this statement confirms that Lockhart knew that

21  plaintiff "was doing legal work."  *Id.* at 15, 31-32.  Plaintiff also contends that three separate

22  incidents in which Lockhart confiscated plaintiff's property demonstrate "the 3 defendants' state

23  of mind."  *Id.* at 17-18.

24  ////

25  ////

26  ////

8

1     Plaintiff also argues that defendants cannot demonstrate a direct connection between his

2  possession of his victim's image to institutional security or public safety.  *Id.* at 19-20.  Plaintiff

3  contends this is so because he has never received "any prison writeups" relating to his possession

4  of those items.  *Id.* at 20.

5     Finally, plaintiff argues that section 3270 is unconstitutionally vague and overbroad

6  because it does not expressly prohibit possession of "internet face photographs of crime

7  victims," or expressly prohibit drawings of crime victims.  *Id.* at 7, 9-12.  He argues he should be

8  permitted to possess the images of his victim because they do contain frontal nudity.  *Id.* at 8.

9     In opposition, defendants argue the court should deny plaintiff's motion for summary

10  judgment because he has failed to meet his burden in proving even one element of his claim.

11  Dckt. No. 39 at 7.

12  **V.     Defendants' Cross-Motion for Summary Judgment**

13     The evidence submitted to the court by defendants establishes the following:

14     Plaintiff was convicted in 1991 for the first degree murder of the actress Rebecca

15  Schaeffer, who he shot at point blank in her residence.  Defs.' Mot. for Summ. J. ("Dckt. No.

16  39"), Stmt. of Undisputed Facts in Supp. Thereof ("DUF") 2.  Plaintiff was sentenced to a state

17  prison term of life without the possibility of parole.  DUF 3.

18     As part of Lockhart's duties at Mule Creek State Prison, he regularly searched incoming

19  institutional mail within the mail room.  DUF 6.  On February 24, 2009, defendant Lockhart was

20  performing his duties in the Mule Creek State Prison mailroom, and searched an envelope

21  addressed to plaintiff, from a K. Karnig.  DUF 7.  Inside the envelope were six photographs of

22  Ms. Rebecca Schaeffer, the former actress who plaintiff murdered.  DUF 8.  At the time

23  Lockhart searched the envelope, he was aware that plaintiff had been convicted for stalking and

24  killing Ms. Schaeffer, and that plaintiff is currently serving a prison sentence for this crime.

25  DUF 9.  Lockhart confiscated the six photographs.  DUF 10.

26  ////

9

1    While inspecting plaintiff's mail, Lockhart also reviewed correspondence from Karnig

2    asking plaintiff to send "more" drawings of Ms. Schaeffer and other people.  DUF 11.

3    Based upon Lockhart's findings in the mailroom, Lockhart conducted a search of

4    plaintiff's cell on February 25, 2009, with the help of defendant correctional officers Butcher and

5    Ramos.  DUF 13-14.  During the cell search, Lockhart confiscated seven pieces of paper that

6    included either written references or photographs of Ms. Schaeffer.  DUF 15.

7    Lockhart's purpose in confiscating the photographs and written references to Ms.

8    Schaeffer was to ensure the safety of the public and the Mule Creek State Prison staff.  DUF 19.

9    Lockhart believes that allowing plaintiff to possess photographs of Ms. Schaeffer, who plaintiff

10   killed due to his obsession, would also be contrary to his rehabilitative process while

11   incarcerated.  DUF 19; Lockhart Decl. ¶ 15.

12   In addition to the instant case, plaintiff has two additional pending lawsuits against staff

13   at Mule Creek State Prison.  Lockhart Decl. ¶ 16.  Lockhart asserts that the decisions to

14   confiscate the photographs and search plaintiff's cell were not motivated in any way by

15   plaintiff's previous lawsuits.  *Id.*; DUF 20.  Moreover, Butcher and Ramos had no knowledge of

16   these lawsuits when they were asked to assist Lockhart in the search of plaintiff's cell.  DUF 21.[4]

17   They assisted only because of the internet photographs that had been confiscated by Lockhart the

18   day before.  Dckt. No. 39, Decl. of Ramos in Supp. Thereof ("Ramos Decl.") ¶ 9; Decl. of

19   Butcher in Supp. Thereof ("Butcher Decl.") ¶ 9.

20   Defendants seek summary judgment in their favor on the grounds that the search and

21   confiscation of plaintiff's mail was not retaliatory, that confiscation of the photographs served a

22   legitimate correctional goal, and that they are entitled to qualified immunity.  Dckt. No. 39 at 4-

23   7.  They claim that plaintiff's possession of the photographs of his murder victim is not

24

25        [4] Defendants' evidence does not indicate whether Lockhart had any knowledge of
     plaintiff's lawsuits when he searched plaintiff's cell.  *See* DUF 21 (citing only to the declarations
26   of Butcher and Ramos).

1    consistent with the goal of rehabilitation.  *Id.* at 6.  They point out that plaintiff was willing to

2    kill because of his obsession with this actress, and argue that plaintiff's possession of her

3    photographs poses a genuine threat to the safety and security of the institution because of what

4    plaintiff might do to obtain or protect those images from others.  *Id.* at 6.  Further, defendants

5    contend that because Butcher and Ramos did not have knowledge of plaintiff's other pending

6    lawsuits, plaintiff cannot show that either defendant took some adverse action against plaintiff

7    because of his exercise of his First Amendment rights.  *Id.*  Finally, defendants contend that they

8    are entitled to qualified immunity.

9            In opposition, plaintiff contends that the photographs of his victim are not contraband,

10   and repeats his argument that section 3270 is vague and overbroad.  Dckt. No. 41 at 3.  He

11   argues that because there is no evidence that he has misbehaved as a result of possessing these

12   photographs, there is no direct connection between the decision to confiscate them and a

13   legitimate correctional goal.  *Id.* at 2, 4, 8-9.  Plaintiff characterizes confiscation of the

14   photographs as an "exaggerated response."  *Id.* at 3.

15           In their reply, defendants contend that the photographs were "contraband" within the

16   meaning of California Code of Regulations, title 15, section 3006(c)(16), which defines

17   contraband as "material that is reasonably deemed to be a threat to a legitimate penological

18   interest."  Dckt. No. 42 at 3.  Finally, they state that plaintiff has failed to provide the court with

19   any evidence that defendants are not entitled to qualified immunity.  *Id.*

20   **VI.    Discussion**

21           **A.      Retaliation**

22           As discussed above, plaintiff's retaliation claim consists of five elements on which he

23   bears the burden of proof.  Plaintiff must establish that the defendants' decision to search his cell

24   and confiscate his property was motivated by the fact that plaintiff had filed a federal civil rights

25   lawsuit, and that defendants' decision did not reasonably advance a legitimate correctional goal.

26   *Brodheim*, 584 F.3d at 1271; *Rhodes*, 408 F.3d at 568.

1    Plaintiff has submitted evidence that Lockhart responded to plaintiff's comment by

2  noting that plaintiff had a history of frequently filing administrative grievances.  Dckt. No. 38 at

3  15.  He also submits evidence that Lockhart confiscated his property on three separate occasions.

4  *Id.* at 17-18.  However, it cannot be reasonably inferred from this evidence that the defendants

5  Butcher and Ramos had any knowledge of plaintiff's federal civil rights lawsuit when they

6  searched his cell on February 25, 2009.  Moreover, as to Lockhart, defendants have presented

7  legitimate penological purposes for removing the photographs of plaintiff's murder victim and as

8  discussed, that action further those correctional goals.  Therefore, plaintiff fails to demonstrate

9  there is a triable issue of material fact as to whether defendants searched his cell "because of" his

10  protected conduct.  *See Rhodes*, 408 F.3d at 567-68.  Moreover, defendants' declarations state

11  that none of them were motivated to search plaintiff's cell or confiscate his property because he

12  had previously filed a federal lawsuit.   DUF 20, 21; Lockhart Decl. ¶ 16; Ramos Decl. ¶ 9;

13  Butcher Decl. ¶ 9.  That testimony is not refuted with evidence.  Plaintiff's conclusory allegation

14  to the contrary is not supported by specific evidence in which a reasonable inference could be

15  drawn that retaliation for protected First Amendment activity, rather than removing images of a

16  murder victim with whom plaintiff is still obsessed, was the true motive for the confiscation of

17  the pictures.

18    Furthermore, there is a legitimate penological purpose for depriving plaintiff of the

19  images of his victim.  Legitimate penological interests include "security, order, and

20  rehabilitation."  *Procunier*, 416 U.S. at  413.  It is undisputed that the murder arose out of

21  plaintiff's obsession with his victim, who he stalked and murdered.  DUF 2, 9.  Lockhart has

22  explained his purpose in confiscating the images of the victim as concern for the safety of those

23  at Mule Creek State Prison who have to manage plaintiff and the other prisoner with whom he

24  associates, and to further plaintiff's rehabilitation while serving his life sentence.  DUF 19;

25  Lockhart Decl. ¶ 15.  Lockhart appropriately took into consideration the fact that plaintiff's

26  motivation to kill was his obsession with his victim.  Indeed, plaintiff's continued efforts to

1   obtain and possess the images plainly manifest a continued and bizarre obsession with the person

2   he killed, as well as information and photos of her.  That obsession posed a genuine threat to the

3   safety and security of the institution because of what plaintiff might do to obtain or protect those

4   images from others.  Dckt. No. 39 at 6.  Removal of those pictures furthered a legitimate

5   penological interest of prison safety.   Moreover, plaintiff's possession of the pictures and his

6   continued obsession with his victim is not consistent with the objective of rehabilitation.  *Id.* at 7.

7   Furthering safety, security and inmate rehabilitation are legitimate penological goals.  Plaintiff

8   has not produced evidence upon which a reasonable jury could conclude that retaliation rather

9   than these interests, as articulated by the defendants, was the true motivation for taking from

10  plaintiff the images of his victim.

11          Plaintiff asserts that he had never received any "writeups" related to his possession of his

12  victim's image.  Dckt. No. 38 at 20.  However, prison officials do not need to identify past

13  incidents in order to justify their decision to prohibit an inmate's possession of certain materials.

14  *See Casey v. Lewis*, 4 F.3d 1516, 1521 (9th Cir. 1993).  Their decision can be justified through

15  their anticipation of security problems.  *Id.*

16          There is no triable issue of material fact regarding whether defendants searched

17  plaintiff's cell and confiscated the images because of plaintiff's federal lawsuit, or whether those

18  actions reasonably advance a legitimate correctional goal.  Accordingly, the undersigned finds

19  that plaintiff's motion for summary judgment must be denied as to this claim, and that

20  defendants' cross- motion must be granted.

21          **B.      Confiscation of Mail/Property**

22          Plaintiff's claims related to the confiscation of the victim's images from his mail presents

23  a similar issue and analysis.  To prevail on his challenge to the regulations on which Lockhart

24  relied in confiscating plaintiff's mail, plaintiff "must demonstrate that the regulations are not

25  reasonably related to legitimate penological interests, or that there is a genuine issue of material

26  fact regarding the applicability of the regulations to the materials."  *Bahrampour*, 356 F.3d at

13

973.

Section 3270 announces that the primary objective of the correctional institutions is to afford inmates a chance to participate in "rehabilitative activities" and to insure the "security of the institution." Cal Code Regs, tit. 15, § 3270.  It states that the "requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities . . . ." *Id.*  Additionally, section 3006(c)(16) defines contraband as "material that is reasonably deemed to be a threat to a legitimate penological interest."  Cal Code Regs, tit. 15, § 3006(c)(16).

Defendants' evidence shows that the regulations support the legitimate penological interests of supporting an inmate's rehabilitation and protecting the safety of those at the correctional institution.  The regulations prohibit an inmate from possessing materials that impede his rehabilitation or would pose a threat to institutional safety.  Plaintiff murdered his victim due to his strange obsession.  His possession of images of his victim simply continue to feed that obsession.  As discussed above, defendants have shown a rational connection between plaintiff's possession of his victim's image and a detrimental impact on plaintiff's rehabilitation as well as the safety of others in the prison.  Regulations which permit the confiscation of the murder victim's images "further an important or substantial governmental interest unrelated to the suppression of expression." *Thornburgh*, 490 U.S. at 415 (quotations omitted); *see id.* ("Where . . . prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' in the technical sense in which we meant and used that term in *Turner*.").

Plaintiff argues he should be allowed to possess his victim's images as long as they do not contain frontal nudity.  Dckt. No. 38 at 8.  The question of nudity is simply irrelevant.  It had nothing to do with the defendant's stated reasons for confiscating the images, and whether the images contain nudity has no bearing on whether plaintiff's possession of the images is contrary to the rehabilitative process or poses a threat to institutional safety.

1      Plaintiff also contends that the confiscation of the images was an "exaggerated response."

2 Dckt. No. 41 at 3.  However, plaintiff does not come forward with evidence of any "easy

3 alternatives" to suggest that the confiscation was an "exaggerated response" to institutional

4 concerns.  *See Turner*, 482 U.S. at 90; *cf Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1152

5 (9th Cir. 2004) (per curiam) (holding that policy prohibiting any material downloaded from the

6 internet was "arbitrary way to achieve reduction in mail volume").

7      Prison officials have broad discretion to determine what materials enter their prisons.

8 *Thornburgh*, 490 U.S. at 416.  Regulations that require the "exercise of discretion" in making

9 that determination "strike an acceptable balance" between the prison's legitimate governmental

10 objectives and the prisoners' First Amendment rights.  *Id.* at 416-17 & n.15.  Sections 3270 and

11 3006(c)(16) require prison officials to use their discretion to determine what materials an inmate

12 may possess.  Defendants' evidence demonstrates that Lockhart's decision, based on section

13 3270, to confiscate items referencing plaintiff's victim, was reasonably related to legitimate

14 penological interests.  Plaintiff has not shown that this decision was not reasonably related to

15 legitimate penological interests, or that defendants applied section 3270 in a way that was

16 arbitrary or irrational.  Nor has plaintiff created any triable disputes of fact regarding whether the

17 *Turner* factors weigh in his favor.  Accordingly, plaintiff's motion for summary judgment must

18 be denied, and defendants' cross-motion must be granted.

19 **VII.    Conclusion**

20      Accordingly, it is hereby ordered that plaintiff's motion to strike (Dckt. No. 40) is

21 granted.

22      Further, for the reasons explained above, it is RECOMMENDED that:

23    1.  Plaintiff's July 22, 2011 motion for summary judgment be denied;

24    2.  Defendants' August 2, 2011 motion for summary judgment be granted;

25    3.  The Clerk be directed to enter judgment in defendants' favor; and

26 ////

4. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 27, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

16